IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BD. OF TRUSTEES OF THE
IBEW FUND LOCAL NO. 82
PENSION FUND *et al.*,

    Plaintiffs,

v.

BRIGHT STREET, LLC, *et al.*,

    Defendants.

Case No. 3:16-cv-481

JUDGE WALTER H. RICE

DECISION AND ENTRY OVERRULING MOTION TO DISMISS THE
AMENDED COMPLAINT OF DEFENDANT SECURITY FENCE GROUP,
INC. (DOC. #21), AND OVERRULING AS MOOT SECURITY FENCE'S
MOTION TO STRIKE MEMORANDUM OF FACTS (DOC. #15); CLAIMS
OF PLAINTIFFS BOARD OF TRUSTEES OF THE IBEW FUND LOCAL
NO. 82 PENSION FUND, IBEW LOCAL NO. 82 PENSION FUND,
BOARD OF TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT
FUND AND THE NATIONAL ELECTRICAL BENEFIT FUND AGAINST
SECURITY FENCE SHALL PROCEED TO DISCOVERY

Plaintiffs Board of Trustees of the IBEW Local No. 82 Pension Fund, IBEW Local No. 82 Pension Fund ("IBEW Fund"), Board of Trustees of the National Electrical Benefit Fund and National Electrical Benefit Fund ("NEB Fund" or "NEBF") (collectively "Plaintiffs")[1] allege that Defendant Security Fence Group, Inc. ("Security Fence"), purchased substantially all of co-Defendant Bright Street, LLC's ("Bright Street") assets via an Asset Purchase Agreement ("APA"). Plaintiffs argue that, upon execution, Bright Street effected a "complete withdrawal" from the IBEW and NEB Funds, as that term is

---

[1] The IBEW Fund and NEB Fund are also collectively referred to as the "Plaintiff Funds."

defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Security Fence, by substantially continuing Bright Street's business, became its successor entity. Doc. #18, ¶¶ 26-28, 33-34, PAGEID #480-81, 482 (citing 29 U.S.C. § 1384). Consequently, Plaintiffs allege, Security Fence assumed liability for any contribution obligations that Bright Street had incurred to the IBEW and NEB Funds, and Security Fence, Bright Street and Bright Street Supply, LLC ("BSS"), are jointly and severally liable "for a proportionate share of the unfunded vested liability for benefits owed to participants" of the IBEW and NEB Funds. *Id.*, ¶¶ 29-30, PAGEID #481.[2] Security Fence has filed a Motion to Dismiss the Amended Complaint with Prejudice ("Motion"). Doc. #21. For the reasons set forth below, its Motion is OVERRULED.

## I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Bright Street and BSS were Ohio companies that were owned by a Julia K. Gourley ("Gourley"), and Bright Street employed members of Local Union No. 82, International Brotherhood of Electrical Workers ("Local 82" or "the Union"). Doc. #18, ¶¶ 8-11, PAGEID #476-77. As part of the Collective Bargaining Agreement ("CBA") between Bright Street and Local 82, Bright Street was required to make regularly scheduled contributions to the IBEW and NEB Funds, both of which are defined benefit multiemployer pension funds governed by ERISA's Multiemployer Pension Plan

---

[2] It is unknown whether BSS continued after the execution of the APA. Bright Street and BSS never answered or otherwise moved in the case, and the Court entered default judgment against them on May 15, 2017. Doc. #22.

[3] As Defendant's motion to dismiss is brought under Rule 12(b)(6), the Court, for the purposes of the motion, must treat Plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

2

Amendment Acts of 1980 ("MPPAA"). *Id.*, ¶¶ 2, 5, PAGEID #474, 475 (citing 29 U.S.C. §§ 1002(35, 37), 1301(a)(3)).

On or about June 12, 2015, Bright Street and Security Fence executed the APA, through which Security Fence purchased "substantially all" of Bright Street's assets. Doc. #18, ¶¶ 10, 31-32, PAGEID #476, 481-82 (citing Doc. #19, § 1.1, PAGEID #495-96). The APA contained no provision that would have "exempt[ed the] asset sale from causing a complete withdrawal" by Bright Street from the Plaintiff Funds. *Id.*, ¶ 33, PAGEID #482 (citing 29 U.S.C. § 1384). However, the APA did contain a provision requiring Bright Street to indemnify Security Fence for any obligation that Bright Street had incurred or would incur as to Local 82 or any other union. *Id.*, ¶ 35 (citing Doc. #19, § IV.3.ii, PAGEID #501).

Further, Plaintiffs allege that after the APA was executed:

> Security Fence performed the same work in the same jurisdiction of the Local No. 82 CBA that Defendant Bright Street had performed prior to June 12, 2015[,] for which contributions had been required by Defendant Bright Street. As a result, the business of Defendant Bright Street taken over by Defendant Security Fence continued uninterrupted.

Doc. #18, ¶ 34, PAGEID #482. Security Fence hired at least two of Bright Street's employees, took over Bright Street's business telephone number, and rechristened Bright Street as the Security Fence Traffic Signals and Street Lighting Division. *Id.*, ¶¶ 37, 39-40, PAGEID #483 (citations omitted). In light of the above, Plaintiffs claim, Security Fence is jointly and severally liable for any contribution obligation by Bright Street that was due and owing at the time that the APA was executed. Further, Security Fence is liable for the contributions that would have become liabilities of Bright Street, based on the work performed by Security Fence's Traffic Signals and Street

Lighting Division that was subject to the CBA and Inside Working Agreement ("IWA"). Doc. #18, PAGEID #492-93.

On or about December 30, 2015, NEB Fund issued to Bright Street a demand for payment in the amount of $101,639.12. Bright Street did not request review of NEB Fund's liability determination; nor did it request arbitration or otherwise dispute liability or the amount owed. Doc. #18, ¶¶ 66-68, PAGIED #489 (citing Doc. #19-9). Plaintiffs argue that, because Bright Street failed to cure its default within sixty days of receiving notice, "the entire amount of the withdrawal liability . . . is now due and owing from Defendant Bright Street." *Id.*, ¶ 73, PAGEID #490-91.

On or about January 13, 2016, IBEW Fund issued to Bright Street a demand for payment of its withdrawal liability in the amount of $618,045. Bright Street did not request review of IBEW Fund's liability determination; nor did it request arbitration or otherwise dispute liability or the amount owed. Doc. #18, ¶¶ 53-55. PAGEID #486. As Bright Street failed to cure its default within sixty days of receiving notice, Plaintiffs argue, "the entire amount of the withdrawal liability . . . is now due and owing from Defendant Bright Street." *Id.*, ¶ 60, PAGEID #487.

On November 18, 2016, Plaintiffs filed their initial Complaint against Bright Street, BSS and Security Fence. Doc. #1. On January 27, 2017, Security Fence filed a motion to dismiss the Complaint as against it. Doc. #8. On April 17, 2017, after briefing on Security Fence's initial motion was complete, Plaintiffs moved for leave to file an amended complaint, Doc. #17, which this Court sustained in a notation order the

following day. Plaintiffs filed their Amended Complaint on April 19, 2017, Doc. #18[4], and Security Fence filed the instant Motion on May 3, 2017. Doc. #21. At no point did Security Fence seek review of the liability determinations made by Plaintiff Funds; nor did it demand arbitration or take any other action under ERISA.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6)

---

[4] Bright Street and BSS filed a Memorandum of Facts in response to Plaintiffs' original Complaint. Doc. #13. Prior to the filing of the Amended Complaint, Plaintiffs filed a Motion to Strike the Memorandum of Facts. Doc. #15. As "[a]n amended complaint supersedes an earlier complaint for all purposes[,]" *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (quoting *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013)), and default judgment has been entered against Bright Street and BSS, Plaintiffs' Motion to Strike is OVERRULED AS MOOT.

5

motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id*. at 679.

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). However, if documents are attached to or referenced in a complaint and are central to a plaintiff's claims, the Court may consider statements contained therein without converting treating a motion to dismiss as one for summary judgment. *Thomas v. Noder-Love*, No. 13-2495, 621 F. App'x 825, 828 (6th Cir. 2015) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)).

6

## III. ANALYSIS

Security Fence raises three arguments as to why, as a matter of law, it cannot be liable for Bright Street's withdrawal liabilities or continued payments to the Funds as Bright Street's successor entity: (1) Plaintiffs did not provide notice of withdrawal liability to Security Fence; (2) Security Fence did not receive the opportunity to request review of the liability determinations or demand arbitration of same; and (3) Plaintiffs have not properly alleged that Security Fence performed work subject to the CBA and IWA, *i.e.*, they have failed to allege that Security Fence substantially continued Bright Street's operations. Doc. #21, PAGEID #709, 712, 717-19. For the reasons set forth below, Plaintiffs have alleged sufficient facts for their claims against Security Fence to proceed to discovery.

### A. Plaintiffs have Plausibly Alleged that Security Fence was on Adequate Notice of Potential Withdrawal Liability

Security Fence argues that it was never provided notice of Bright Street's withdrawal liability by Bright Street, Plaintiffs or anyone else, at any time before or after the execution of the APA. Doc. #21, PAGEID #709, 712. In fact, Security Fence claims that it had no notice of any withdrawal liability until it was served with a copy of the original Complaint. *Id.*, PAGEID #712. Thus, Security Fence argues, Plaintiffs are attempting to impute notice from the APA's "boilerplate" indemnity provision, "whereby Bright Street agreed to indemnify Security Fence for certain liabilities and obligations that may arise from the transaction." *Id.* PAGEID #709 (citing Doc. #18, ¶ 42, PAGEID #482-83). Security Fence argues that single clause is not sufficient, such that joint and several liability may be imposed against it. *Id.*, PAGEID #710-11 (citing *Tsareff v.*

7

*ManWeb Servs., Inc.*, 794 F.3d 841, 847 (7th Cir. 2015); *Heavenly Hana LLC v. Hotel Union & Hotel Indus. of Hawai'i Pension Plan*, No. 14-CV-03743-JCS, 2016 WL 524327, at *12 (N.D. Cal. Feb. 10, 2016)).

Moreover, Security Fence argues that Plaintiffs' failure to inform it directly of Bright Street's default meant that Security Fence had no opportunity to seek administrative review or demand arbitration as to such liability. Under ERISA, failure to demand such review or arbitration cuts off all defenses, "and the charged amount becomes due and owing. As a result, the risk of erroneous deprivation by Plaintiffs' failure to send Security Fence notice is extraordinarily high." Doc. #21, PAGEID #715. Thus, Security Fence argues, to construe ERISA and the MPPAA notice procedures, in the manners urged by Plaintiffs, would violate Security Fence's right to due process. *Id.*, PAGEID #713-16 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

Plaintiffs counter that Security Fence misconstrues ERISA and MPPAA's notice requirement. They argue that the law requires <u>only</u> that notice be transmitted to a participating employer—which was Bright Street, not Security Fence. Plaintiffs claim that, because Security Fence is Bright Street's successor, their notice to Bright Street as to <u>Bright Street's</u> withdrawal liability was sufficient to put <u>Security Fence</u> vicariously on notice of its withdrawal liability. Doc. #23, PAGEID #730-31 (citing 29 U.S.C. § 1399(b)). Further, Plaintiffs argue, their notice to Bright Street contained all the information required by ERISA: (1) the amount of agreed-upon payments; (2) schedule of payments; and (3) a demand for payment of all sums due and owing. *Id.*, PAGEID #728 (citing 29 U.S.C. § 1399(b)(1)). Plaintiffs claim that that by failing to request

arbitration, Bright Street—and, consequently, Security Fence—had waived any objection to the form and manner of notice. *Id.*, PAGEID #728-29 (citing Doc. #19-8, 19-9; 29 U.S.C. §§ 1382, 1399, 1401(a)(1); *Bowers v. Transportación Maritima Mexicana, S.A.*, 901 F.2d 258, 262 (2d Cir. 1990)). Finally, Plaintiffs argue, even if Security Fence was entitled to independent notice, the original Complaint detailed the amounts owed and a schedule for payments, and its prayer for relief constituted a sufficient demand for payment from Security Fence. Thus, they claim, the original Complaint served as notice sufficient to render Security Fence jointly and severally liable for Bright Street's withdrawal deficiency. *Id.*, PAGEID #732 (citing *Bowers*, 901 F.2d at 263; *Board of Trustees of Nat'l Shopmen Pension Plan v. N. Steel Corp.*, 657 F. Supp.2d 155, 158-59 (D.D.C. 2009)).

Security Fence directs this Court to *Heavenly Hana*, which concerned an asset sale agreement that contained a boilerplate indemnity clause but did not mention the seller's multi-employer pension fund contributions or the seller's intent to cease meeting its fund obligations. 2016 WL 524327 (N.D. Cal. Feb. 10, 2016)). The District Court in *Heavenly Hana* held that, as a matter of law, such a boilerplate clause was by itself insufficient to put the asset purchaser on notice of potential withdrawal liability. Thus, the District Court concluded, the asset purchaser could not be held jointly and severally liable for the withdrawal liability of the seller. *Heavenly Hana*, 2016 WL 524327, at *4-5, 11, 18. Security Fence urges this Court to apply the same logic, which in turn, it claims, would foreclose Plaintiffs from recovering against it as to any of Bright Street's contribution obligations.

The Court finds that *Heavenly Hana* is distinguishable and that Security Fence's argument is lacking at the motion to dismiss stage. In *Heavenly Hana*, the seller averred that it had:

> [P]rovided Buyer with copies of all notices of default or notices regarding plan funding deficiency, if any, it has received from the Plan Administrator of any multi employer [sic] pension plan covering employees of the Resort or from any other party, including the union covering the employees who are participants in the multi-employer pension plan.

2016 WL 524327, at *4. Thus, by agreeing to that contractual provision, and by not providing any notice of deficiency or withdrawal liability, the seller implicitly warranted to the buyer that there were no deficiencies that were outstanding or would subject the buyer to withdrawal liability. Security Fence does not identify, and the Court is unaware of, any provision in by which Bright Street represented that the APA itself constituted all information regarding pension obligations and potential withdrawal liability. Moreover, Plaintiffs allege that Security Fence knew that Bright Street employed members of Local 82 at the time of the APA's execution. Doc. #18, ¶ 35, PAGEID #482.

Finally, while the cases cited by Plaintiff regarding an initial complaint serving as notice to a successor corporation are not binding on this Court, *Bowers*, 901 F.2d at 263; *N. Steel*, 657 F. Supp.2d at 158-59, their reasoning is sound, and Security Fence, in its reply memorandum, does not attempt to differentiate them. Thus, the Court may not reasonably conclude that, as a matter of law, Security Fence lacked notice of Bright Street's withdrawal liability at the time of the APA's execution, such that imposition of liability would deprive Security Fence of due process.

**B. Plaintiffs have Plausibly Alleged that Bright Street Effected a Complete Withdrawal from the IBEW and NEB Funds, and that Security Fence Performed work Subject to the CBA and IWA**

Plaintiffs allege that, after the APA was executed, Security Fence performed the type of work within the specific geographic area that was subject to the CBAs and IWA that were in effect between Bright Street and Local 82 at the time that the APA was signed. Doc. #18, ¶ 28, PAGEID #480-81; Doc. #19-10, ¶ 6, PAGEID #659. Plaintiffs argue that Bright Street, by executing the APA, effected a complete withdrawal from the IBEW and NEB Funds, and that Security Fence, by performing work covered by the CBAs and IWA, is operating as Bright Street's successor.

Security Fence argues that the Amended Complaint contains only a bare allegation that Fence was performing within the geographic area of the CBA between Plaintiff and Bright Street. Doc. #21, PAGEID #717 (citing Doc. #18, ¶ 28, PAGEID #480-81). It claims that the CBA does not describe the scope of work covered by those agreements between Plaintiffs and Bright Street, and that at no point did Security Fence know the type of work that is covered. *Id.* "It is quite probable[,]" Security Fence argues, that it "was installing a guardrail or metal fence, work which has nothing to do with electrical contracting and work which would fall outside the province of Bright Street's CBA and [IWA] with [Local 82]." *Id.*, PAGEID #718. Consequently, Security Fence claims, the IWA could not have applied to it, and it cannot be considered Bright Street's successor corporation. Doc. #24, PAGEID #878.

Contrary to Security Fence's argument, Plaintiffs' allegations—which the Court, at this stage, accepts as true—permit the reasonable inference that such work may have been within the scope of the IWA, such that: (a) Security Fence would be considered Bright Street's successor corporation; and (b) via the APA, Bright Street

11

effected a "complete withdrawal" from the IBEW and NEB Funds, such that Security Fence would be jointly and severally liable for Bright Street's contribution obligations to those Funds. Plaintiffs allege that the APA prohibited Defendant Gourley from operating any business that was substantially similar to that of Bright Street for five years. Doc. #18, ¶ 36, PAGEID #483 (citing Doc. #19, § V.1, PAGEID #504-06). Further, they claim that Security Fence hired at least two Bright Street employees and purchased Bright Street's business phone numbers, and that calls to Bright Street's old number are answered "Security Fence, Traffic Signals and Street Lighting Division." *Id.*, ¶¶ 37, 39-40.

Finally, Security Fence argues that the Court may not plausibly "infer that traffic signals[,]" which are subject to the IWA "are equivalent to 'electrical signs' and 'street electrical decorations[,]'" Doc. #24, PAGEID #877, which, it claims, are not. *Id*. Yet, as Security Fence notes, the IWA does not detail the precise type of work subject to that agreement. Doc. #24, PAGEID #876 (citing Doc. #19-6; Doc. #19-7). In such a circumstance, the issue of whether certain work comes within the scope of such an agreement is properly raised after discovery is complete. For these reasons, Plaintiffs' claims against Security Fence must be allowed to proceed.

## IV. CONCLUSION

For the foregoing reasons, Security Fence's Motion to Dismiss, Doc. #21, is OVERRULED. Plaintiffs' claims against Security Fence shall proceed to discovery.

12

Date: December 11, 2017

*(signature)*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE