IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BD. OF TRUSTEES OF THE IBEW  :
FUND LOCAL NO. 82 PENSION
FUND, *et al.*,

        Plaintiff,  :     Case No. 3:16-cv-481

    v.            JUDGE WALTER H. RICE

BRIGHT STREET, LLC, *et al*,  :

        Defendant.

---

DECISION AND ENTRY SUSTAINING MOTION TO DISMISS THE
AMENDED COUNTERCLAIM OF DEFENDANT SECURITY FENCE
GROUP, INC. (DOC. #31); AMENDED COUNTERCLAIM DISMISSAL
WITHOUT PREJUDICE TO FILING A SECOND AMENDED
COUNTERCLAIM WITHIN 14 DAYS SUBJECT TO THE STRICTURES
OF FED. R. CIV. P. 11

---

Plaintiffs, Board of Trustees of the IBEW Local No. 82 Pension Fund ("IBEW

Local Trustees"), IBEW Local No. 82 Pension Fund ("IBEW FUND"), Board of

Trustees of the National Electrical Benefit Fund ("NEBF Trustees") and The

National Electrical Benefit Fund ("NEB Fund" or "NEBF") (collectively "Plaintiffs"),

have filed a Motion to Dismiss the Amended Counterclaim of Defendant, Security

Fence Group, Inc. ("Security Fence"), Doc. #31. Security Fence has filed a

Response, Doc. #35, and Plaintiffs have filed a Reply, Doc. #39. Plaintiffs contend

that the Amended Counterclaim, Doc. #30, alleging fraud, negligent

misrepresentation, conspiracy and abuse of process, should be dismissed for

failure to comply with *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and because the state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.§ 1001 et seq. For the reasons set forth below, Plaintiffs' motion is SUSTAINED.

## I.    Factual Background and Procedural History

On June 12, 2015, Security Fence entered into an Asset Purchase Agreement ("APA") with Defendant Bright Street, LLC ("Bright Street"). According to the allegations in the Amended Complaint, Security Fence purchased substantially all of Bright Street's assets. Following this purchase, Bright Street ceased operations. Doc. #18, PAGEID ##480-482. During its period of operation, Bright Street had employed members of Local Union 82, International Brotherhood of Electrical Workers ("IBEW") ("Local 82" or the Union"). Doc. #18, PAGEID#479.  Bright Street and Local Union 82 were part of a Collective Bargaining Agreement ("CBA"). Pursuant to the CBA, Bright Street was required to make regularly scheduled contributions to the IBEW Fund and NEB Fund (collectively "Funds") to fund pension benefits.  Both of these Funds are defined benefit multiemployer pension funds governed by ERISA's Multiemployer Pension Plan Amendment Acts of 1980 ("MPPAA"). *Id.*

Following the June 12, 2015, APA and specifically in December 2015, and January, March, and April of 2016, the IBEW Fund sent demand letters to Bright

Street for alleged unfunded employer contributions to the Fund. Doc. #18, PAGEID##481,486-487. Although the Amended Complaint does not allege that Security Fence was ever contacted by Plaintiffs concerning the unfunded employer contributions, Plaintiffs allege in their Amended Complaint, Doc. #18, that Security Fence is the "federal common law successor" to Bright Street and is jointly and severally liable for the entire amount of the withdrawal liability assessment, an amount in excess of $700,000, along with accrued interest for missed payments, interest on the accelerated amount, liquidated damages and attorney fees. Doc. #18, PAGEID##484,486,489,492-93.

On December 11, 2017, this Court filed its Decision and Entry, Doc. #27, overruling Security Fence's Motion to Dismiss Plaintiff's Amended Complaint and ordered that the case proceed forward to discovery. Thereafter, Security Fence filed its Amended Answer and Amended Counterclaim ("Amended Counterclaim") against the IBEW Local Trustees and the NEBF Trustees, alleging four separate state law claims: Count One – Fraud; Count Two – Negligent Misrepresentation; Count Three – Civil Conspiracy; and Count Four – Abuse of Process. Doc. #30. Security Fence has denied it is a successor to Bright Street. (Doc. #30, PAGEID#917)[1] Security Fence, however, has alleged in its Amended Counterclaim that if it is determined to be a successor, then it "stands in the shoes

_____

1 Default Judgment in the amount of $719,684.12 was entered against Defendants, Bright Street, LLC and Bright Street Supply, LLC, jointly and severally, on May 15, 2017. Doc. #22.

3

of Bright Street as a contributing employer to the funds referenced in the First Amended Complaint." Doc. #30, PAGEID#917. Security Fence further alleges that the "unfunded, vested liabilities to participants and resulting withdrawal liability alleged in the First Amended Complaint "arose as a direct and proximate result of the actions" of the IBEW Local Trustees and the NEBF Trustees as well as Local 82, International Brotherhood of Electrical Workers ("Local Union 82").[2] Finally, Security Fence has alleged that the actions of the IBEW Local Trustees and the NEBF Trustees, "both individually and in concert with others" including Local 82, "were grossly negligent, wanton, reckless, malicious, and with complete disregard for the rights of and have caused damage to Security Fence and/or its alleged predecessor in interest." Doc. #30, PAGEID#918.

## II.    Standard of Review

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be

---

[2] Security Fence has filed an Amended Third-Party Complaint against Local Union 82, International Brotherhood of Electrical Workers. Doc. #32.

granted only if the moving party is nevertheless clearly entitled to judgment."
*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal
citation and quotation marks omitted). However, the court need not accept as true
legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193
F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a
complaint must contain direct or inferential allegations respecting all the material
elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois
Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the
complaint need to be sufficient to give notice to the defendant as to what claims
are alleged, and the plaintiff must plead 'sufficient factual matter' to render the
legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Township
of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S.
662 (2009)). A "legal conclusion couched as a factual allegation" need not be
accepted as true, nor are recitations of the elements of a cause of action sufficient.
*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While the allegations in the complaint are the primary focus in assessing a
Rule 12(c) motion, "matters of public record, orders, items appearing in the record
of the case, and exhibits attached to the complaint[ ] also may be taken into
account," *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting

5

*Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)), without converting the motion into one for summary judgment.

### III.    Legal Analysis

Plaintiffs move to dismiss the Amended Counterclaim due to the alleged failure of Security Fence to plead factual allegations as required by *Ashcroft v. Iqbal, Bell Atlantic v. Twombly* and in accordance with Fed. R. Civ. P. 9(b). Plaintiffs also move for dismissal of the Amended Counterclaim based on ERISA's preemption of state law claims. The Court will address each of the two arguments separately.

#### A.  Factual Allegations of the Amended Counterclaim

Plaintiffs contend that dismissal is proper of each of the four counts in the Amended Counterclaim because Security Fence failed to comply with the pleading requirements of *Iqbal, Twombly,* and, as to Count I-Fraud and Count II - Negligent Misrepresentation, with the specific pleading requirements of Fed. Civ. R. 9(b). Although Security Fence is correct that Fed. R. Civ. P. 12(b)(6) does not require "detailed factual allegations," more is required than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action....'" *Ashcroft v Iqbal*, at 678 (citing Bell Atlantic v. *Twombly*, 550 U.S. at 555.). Moreover, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation [.]' " *Id.* While Rule 8 "...does not require 'detailed factual

6

allegations," it does demand, in order to avoid Rule 12(b)(6) dismissal, "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Because of the different legal elements for each count pled by Security Fence, the Court will examine each of the counts of the Amended Counterclaim separately.

### 1. Count One – Fraud

Security Fence has alleged fraud against the IBEW Local Trustees and the NEBF Trustees. In *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d (1986), paragraph two of the syllabus, the Ohio Supreme Court set forth the legal elements for a cause of action based on fraud.

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

In addition to pleading the legal elements, a fraud claim must also comply with Rule 9(b) of the Federal Rules of Civil Procedure and must state "with particularity" the circumstances constituting fraud.[3]

The rationale of Rule 9(b) is (1) to alert parties to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions"; (3) to protect reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters. *Chesbrough v.*

---

[3] Although federal procedural law applies in this case, Ohio Civ. Rule 9(B) also requires fraud claims to be stated "with particularity."

*VPA, P.C.,* 655 F.3d 461, 466–67 (6th Cir.2011). Accordingly, to satisfy Rule 9(b), a party must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant and (3) describe the injury resulting from the fraud. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir.2008). However, [R]ule 9(b)'s additional pleading requirements "should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." U.S. ex rel. SNAPP, Inc. at 503-04 (quoting *Michaels Bldg Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 678 (6th Cir. 1988). "The Sixth Circuit has explained that '[s]o long as a [party] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *MyVitaNet.com v. Kowalski*, No. 2:08cv48, 2008 WL 2977889, at *5, 2008 U.S. Dist. LEXIS 57745, at *14 (S.D. Ohio July 29, 2008) (citing *United States v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir.2008)).

In reviewing Count One of the Amended Counterclaim, Security Fence properly pleads the legal elements of fraud as set forth in *Burr v. Bd. of Cty. Commrs. of Stark Cty.* However, the necessary factual allegations are noticeably absent. Specifically, all that is alleged as to fraud is that it occurred because the IBEW Local Trustees and NEBF Trustees failed "to disclose material facts about the extreme insolvency and dire condition of the Plaintiffs' funds, while having a duty to disclose the same." Doc. #30, PAGEID#918. The fraud count also alleges

8

that "Plaintiffs' conduct includes, but is not limited to, failing to properly notify, concealing, misleading and/or misrepresenting to Security Fence's alleged predecessor in interest regarding withdrawal liability." *Id.*

As indicated by the first element of fraud, if a cause of action for fraud alleges concealment, it must also allege an underlying duty to speak and provide some factual basis for the existence of the duty. While there is an allegation that Plaintiff had a "duty to disclose," the fraud claim of Security Fence fails to give any explanation as to the factual basis for the existence of any alleged duty to speak that may have existed between Plaintiffs and Bright Street. The fraud claim also gives no information as to the time, place or content of the fraud and, as far as any "fraudulent scheme," the most that can be ascertained from the allegations in Count I is that the fraudulent conduct of Plaintiffs includes the typical ways to commit fraud, ("failure to properly notify, concealing, misleading and/or misrepresenting") and that said conduct had some connection to "withdrawal liability." Doc. #30, PAGEID#918

The purpose of Fed. R. Civ. 9(b) is not to recite simply the elements of fraud, but to give notice of what the exact nature of the fraud is and when it occurred and to whom. *United States v. Ford Motor* at 504. Based on the allegations of the Amended Counterclaim, the Court finds that the factual allegations in that pleading for fraud are legally insufficient as a matter of law to give notice to Plaintiffs as to what fraud has been alleged, the time, place and

content of the fraud and, as such, neither *Iqbal*, *Twombly*, nor Fed. R. Civ. 9(b) has been satisfied.

### 2. Count II – Negligent Misrepresentation

Plaintiffs have also moved to dismiss Security Fence's claim for negligent misrepresentation and have essentially made the same arguments that it made for dismissal of the fraud claim. Before reviewing whether Security Fence has complied with *Iqbal* and *Twombly*, however, the Court must first determine whether the elements of negligent misrepresentation have been properly pled.

Although similarities exist, negligent misrepresentation is a separate tort from fraud with different legal elements. *Dejaiffe v. KeyBank USA Nat'l Ass'n,* No. L05–1191, 2006 WL 1580053, at *7 (6th App. Dist. June 9, 2006) ("reversing district court for failing 'to recognize and consider negligent misrepresentation as a separate claim'"); *Carpenter v. Scherer–Mountain Ins. Agency*, 135 Ohio App.3d 316, 328 (4th App. Dist. 1999) ("negligent misrepresentation a 'distinct cause of action'"). The Ohio Supreme Court has provided the legal elements to prove a claim for negligent misrepresentation.

> A person who, in the course of his business, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Gutter v. Dow Jones, Inc.*, 22 Ohio St.3d 286, 288 (Ohio 1986). See also, *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4 (1989).

Accordingly, while fraud can be based on either a misrepresentation or, along with an alleged duty to disclose, concealment, a claim for negligent misrepresentation requires an allegation that one affirmatively supplied false information. *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 506 (6th Cir.2003).

Noticeably absent from Security Fence's negligent misrepresentation claim however, is any specific affirmative false representation that was allegedly made by the IBEW Local Trustees and the NEBF Trustees to "Security Fence's alleged predecessor in interest." Instead, Count II of the Amended Counterclaim pleads, for the most part, "concealment by Plaintiffs by and through their authorized employees, agent and/or representative" with some unspecified reference to representations.

> 15. Plaintiffs had a duty to Security Fence's alleged predecessor in interest not to conceal or otherwise make false representations that they knew or reasonably should have known would be communicated to Security Fence's alleged predecessor in interest. Doc. #30, PAGEID#919

Even assuming that the representation concerned "withdrawal liability" (mentioned, although not factually explained, in Count I – Fraud), there is no reference in Count II – Negligent Misrepresentation, as to what the alleged false representation was, who made the affirmative representation or when it was made. Affirmative false statements are required in a negligent misrepresentation claim. *Camp St. Marys Ass'n v. Otterbein Homes*, 176 Ohio App.3d 54, 69, (3rd App. Dist.2008) (quoting *Rockford Homes. Inc. v. Handel*, 5th Dist. No. 07CA006, 2007-Ohio-2581, 2007 WL 1544711 at 42-43).

Because there is no identified affirmative false statement alleged in Count II of the Amended Counterclaim, the Court will not consider the applicability of Fed. R. Civ. P. 9(b). Based on the allegations in Count II, Security Fence has not stated a claim for negligent misrepresentation.

### 3. **Count III - Civil Conspiracy**

In Ohio, a civil conspiracy consists of "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, (10th App. Dist. 2009) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, (1995)). With regard to pleading a civil conspiracy claim in Ohio, the same "must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Ghaster v. City of Rocky River*, 2010 U.S. Dist. LEXIS 71020, *33, 2010 WL 2802685 (N.D. Ohio May 12, 2010) (quoting *Avery v. City of Rossford*, 145 Ohio App.3d 155,165, (6th App. Dist. 2001)); see also *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984) (determining that conclusory language void of factual allegations was insufficient to support conspiracy claim.) as cited in *Spears v. Chrysler* , 2011 WL 540284, S.D. Ohio, W.D. at 11.

A conspiracy claim requires an underlying unlawful act. *Gosden v. Louis,* 116 Ohio App.3d 195, 219 (9th App. Dist. 1996); *Minarik v. Nagy*, 8 Ohio. App.2d 194-195 (8th App. Dist. 1963.) The malice involved in the tort is "that state of mind

12

under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Pickle v. Swinehart*, 170 Ohio St. 441, 443 (1960).

In Count III of the Amended Counterclaim, although the legal elements are pled, the necessary factual allegations are absent. Instead, the civil conspiracy alleges only that the underlying wrongful act was some unspecified fraud.

> 20. The unlawful acts of Plaintiffs include the activity described above, which include, but are not limited to concerted activity to commit fraud. Doc. #30, PAGEID#920.

It is well established in Ohio that conclusory pleading in common law civil conspiracy claims is insufficient as a matter of law. *Spears v. Chrysler* at 12. E.g., *Trans Rail Am., Inc. v. Hubbard Twp.*, 2010 U.S. Dist. LEXIS 2682, 2010 WL 184082 (N.D. Ohio Jan. 13, 2010) (finding a pleading insufficient when it merely alleged "that numerous individual defendants have committed wrongs," rather than alleging "a single fact that would support a conclusion that the defendants had combined to wrong [the plaintiff]"); *In re Nat'l Century Fin. Enters., Inv. Litig.*, at 504. (rejecting a complaint that rested on the bare allegation that the defendants reached a "meeting of the minds" to harm the plaintiffs, but contained no allegations "that would support the existence of a common understanding or shared objective" between the defendants). For these reasons, Security Fence's counterclaim for civil conspiracy must be dismissed.

#### 4. Count IV - Abuse of Process

Pursuant to Ohio law, the elements for the claim of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* 68 Ohio St. 3d 294 (1994). Although Security Fence correctly alleges the legal elements for abuse of process in its Amended Counterclaim, the necessary factual allegations are missing. As a result, the claim for abuse of process contains nothing more than "mere conclusory statements." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 734 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In Count IV of the Amended Counterclaim, Security Fence fails to allege any facts that give any clue as to how the proceeding before this Court "has been perverted to attempt to accomplish an ulterior purpose for which it was not designed." *Yaklevich v. Kemp* at 294. Security Fence must allege that the IBEW Local Trustees and the NEBF Trustees took a "further act in the use of process not proper in the regular conduct of the proceeding." *Lech v. Third Federal Savings*, 1:13cv518, 2014 WL 12647016, at *4 (S.D. Ohio 2014) (Watson, D.J.) (citations omitted). Use of a process, albeit maliciously, is not abuse of process. "Under Ohio law, if one uses process properly, but with a malicious motive, there is no abuse of process." *Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1010 (S.D. Ohio

2002) *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999) (affirming district court's determination that claim for abuse of process was futile due to only conclusory allegation regarding defendant's ulterior motives with no facts to support those contentions). The count for abuse of process before this Court contains only conclusory allegations. Although Fed. R. Civ. 8 does not require detailed factual allegations, dismissal of the abuse of process claim is still required due to the failure to allege any facts that support a plausible claim.

### B. ERISA Preemption

Plaintiffs assert that the state law claims in the Amended Counterclaim are preempted because 29 U.S.C. § 1144(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to" an ERISA-governed employee benefit plan. (Doc. #39, PAGEID#1002). Security Fence, however, argues that because Plaintiffs have alleged that Security Fence "is the federal common law successor to Defendant Bright Street," Doc. #18, PAGEID#484, which Security Fence denies, that Security Fence, now "stands in the shoes of Bright Street as a contributing employer to the funds referenced in the First Amended Complaint." Doc. #30, PAGEID#917. As such, according to Security Fence, the state law claims in the Amended Counterclaim are permissible. Doc. #35, PAGEID#979-981. Although not explicitly stated, Security Fence also appears to be requesting that this Court create federal common law in order to permit Security Fence to state claims against Plaintiffs. For the reasons

set forth below, even assuming that Security Fence has alleged sufficient facts in its Amended Counterclaim to comply with *Ashcroft v. Iqbal* and *Bell Atlantic v. Twombly*, this Court finds that the state law claims of Security Fence's Amended Counterclaim are preempted by ERISA and that, based on the facts of this case, no federal common law claim in favor of Security Fence exists.

**1. Preemption of State Law**

At the outset it should be acknowledged that there exists a strong presumption in favor of ERISA preemption. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Aetna Health Inc. v. Davita*, 542 U.S. 200 (2004), citing *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, (1981). Thus, ERISA preempts state laws that (1) "mandate employee benefit structures or their administration"; (2) provide "alternate enforcement mechanisms"; or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Penny/Ohlmann/Nieman, Inc.* v. *Miami Valley Pension*, 399 F.3d 692, 698 (6th Cir. 2005) (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)). This preemption applies to common law judicial actions as well as to state legislation. *Pilot Life Ins. Co v. Dedeaux*, 481 U.S. 41, 47 (1987).

In this case, Security Fence, allegedly standing in the shoes of Bright Street, has asserted claims based upon state law against plan trustees as to the operation of the pension funds. Because ERISA § 514(a) preempts "any and all state laws insofar as they may now or hereafter relate to any employment benefit plan" 29 U.S.C.§ 1144(a), and because the Supreme Court has given the phrase "relate to" a "broad commonsense meaning," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), superseded by statute on other grounds as stated in *Hunter v. Ameritech*, 779 F. Supp. 419, 420(N.D.Ill.1991) (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739(1985), the state claims in the Amended Counterclaim are preempted by ERISA.

**2. Federal Common Law**

Security Fence also asserts that federal common law under ERISA exists and permits the Amended Counterclaim against Plaintiffs. A review of the relevant case law, however, establishes that no such federal common law can be created in this case.

The Sixth Circuit in *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 420-22 (6th Cir. 2014), reaffirmed the limited circumstances when a court can create federal common law in ERISA cases to the following: 1) "instances in which ERISA is silent or ambiguous"; 2) "where there is an awkward gap in the statutory scheme"; or 3) "where it may be said that federal common law is essential to the promotion of fundamental ERISA policies." *GSMT v. Girl Scouts of America*, at 420 citing *Local 6-0682 Int'l Union of Paper v. Nat'l*

17

*Indus. Grp. Pension Plan*, 342 F.3d 606, 609–10 (6th Cir.2003) (internal quotation marks and citations omitted).

The essence of Security Fence's justification to assert its four separate counterclaims against Plaintiffs, which seek to address the alleged joint and several employer withdrawal liability of Bright Street, is that "Security Fence stands in the shoes of Bright Street as a contributing employer to the funds in the First Amended Complaint." Doc. #30, PAGEID#917. Given that this is the legal theory advanced by Security Fence, there is no "silent or ambiguous" instance, no "awkward gap in the statutory scheme" and no circumstance where the creation "of federal common law is essential to the promotion of fundamental ERISA policies," since a comprehensive mechanism to determine withdrawal liability already exists by virtue of the MPPAA, 29 U.S.C. §§ 1381-1461.

In *DiGeronimo Aggregates, LLC v. Zemla,* 763 F.3d 506, (6th 2014), an employer who contributed to a multiemployer pension plan governed by ERISA filed suit against the plan trustees alleging that the trustees negligently managed the plan resulting in increased withdrawal liability. The Sixth Circuit affirmed the dismissal and in rejecting the employer's argument that all three conditions set forth in *Local 6-0682* for the creation of federal common law were satisfied, noted that employers have no such legal ability to assert a claim against trustees for mismanagement of funds. "…ERISA is not silent on who holds a claim against trustees for negligent management of plan assets: participants and beneficiaries do. By omission, employers do not. See, 29 U.S.C. § 1104(a); see also *Pfeil v. State*

18

*St. Bank & Trust Co.*, 671 F.3d 585, 590–91 (6th Cir.2012), abrogated on other grounds by *Fifth Third Bancorp v. Dudenhoeffer*, –– U.S. ––, 134 (2014); *Local 6–0682*, 342 F.3d at 609 n. 1." In refusing to "…tamper with an enforcement scheme crafted with such care…" the Sixth Circuit succinctly stated that "Had Congress intended to create a negligence cause of action in favor of contributing employers against trustees, it certainly knew how to do so." *Id*. at 511-512; see also, *Briscoe v. Martin*, 444 F. 3d 478 (2006) (employees' fraud, misrepresentation and concealment claims alleging failure to disclose financial condition of self-funded healthcare plan preempted by ERISA).

Similarly, in *United Food and Commercial Workers Union-Employer Pension Fund v Rubber Associates*, 812 F.3d 521 (6th 2016), a multiemployer pension plan governed by ERISA filed suit against an employer, Rubber Associates, and sought enforcement of an arbitrator's award for the employer's withdrawal liability incurred after union-mandated withdrawal from plan occurred. The employer counterclaimed for equitable relief to reduce their withdrawal liability. The Sixth Circuit affirmed the district court decision not to use its lawmaking authority under federal common law to create an equitable remedy for union-mandated withdrawals from the pension fund. In doing so, the Court noted that Congress enacted the MPPAA in order to address issues of withdrawal and calculation of withdrawal liability. *Id*. at 525, citing 29 U.S.C. § 1381(b)(1). As such, the Sixth Circuit rejected the request for the creation of federal common law, finding that ERISA was not "silent" on this issue and had in fact set forth a

comprehensive framework for when and how funds calculate withdrawal liability in the event of an employer's complete withdrawal. *Id.* at 527. The Sixth Circuit noted that the "text of ERISA plainly defines withdrawal liability and addresses the issue of withdrawal liability, 29 U.S.C. § 1391, and found that there can be no gap where ERISA's text addresses the issue before the court and even if one might exist," there is no reason to believe the gap is "awkward." *Id.* at 529. Finally, in reviewing whether the creation of federal common law is essential to the promotion of fundamental ERISA policies, the Court rejected this argument stating that "In this regard, holding that an employer is entitled to equitable relief when faced with a union-mandated withdrawal is not "essential" to promote the fundamental policy of ERISA: "ensuring that private-sector workers would receive the pensions that their employers have promised them." *DiGeronimo Aggregates, LLC* at 513, (citing *Concrete Pipe & Prods. of Calif., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 605–09 (1993)).

Based upon the above cited legal authorities, the Court declines to create federal common law in this litigation.


IV. **Legal Conclusion**

For the foregoing reasons, Plaintiff's Motion to Dismiss Amended Counterclaim of Defendant Security Fence Group, Inc., Doc. #31, is SUSTAINED. The dismissal is without prejudice to said Defendant filing a

second amended counterclaim within 14 days from the date of this filing

subject to the strictures of Fed. R. Civ. P. 11.[4]



Date: September 20, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

_____

[4] While the Iqbal/Twombly pleading deficiencies as explained in this Decision and Entry may be rectifiable, the Court has concerns that any second amended counterclaim may not survive state law preemption.